DORSEY FARLEY v. NELSON, MULLEN & NELSON, INC. AND ANOTHER AND FARRELL & CLARK AND ANOTHER.[1]

October 16, 1931.

Nos. 28,552, 28,562.

*Peter E. Kamuchey,* for relator Farley.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for relators Farrell & Clark and Royal Indemnity Company.

*Weikert, Lohmann & Felhaber* and *F. A. McKennett,* for respondents Nelson, Mullen & Nelson, Inc. and Zurich General Accident & Liability Insurance Company, Ltd.

[1]Reported in 238 N. W. 485.

HILTON, J.

Certiorari to review the order of the industrial commission awarding plaintiff compensation under the workmen's compensation act against Farrell & Clark and the Royal Indemnity Company.

On March 14, 1930, Farley was employed by Farrell & Clark in driving a caterpillar tractor. On that day, while hammering on some of the tractor steel gears, he suffered an accident to his right eye. The day after the accident he consulted Dr. Fulton, who removed from the surface of the eye a small piece of foreign matter which looked like a small piece of steel. Farley visited Dr. Fulton again on the following day (the last time) and continued in the employ of Farrell & Clark until the latter part of April.

On May 6, 1930, Farley was in the employ of Nelson, Mullen & Nelson, Inc; and on that day, while working on a tractor and while hammering and prying with its gears, he testified that something went into his eye that felt exactly like what happened on March 14, but not quite so bad, and that he did not know what the matter was. He later stated to his doctor that he did not recall "any sparks of any kind entering the eye" at that time. He drove the tractor for a number of days thereafter; because of sand on the road particles thereof frequently got into his eyes.

On May 9, while pouring gasolene into the gas tank of the tractor, some gasolene ran into his eye; but as far as this case is concerned that circumstance is of no importance. Two or three days after the gasolene incident he noticed "a kind of black spot" come in front of him and later noticed that his eyesight "was going bad." On May 19 Farley consulted a doctor in Wisconsin near where he was working. That doctor examined his eye and referred him to an eye specialist. Farley then started to drive to St. Paul. On the way his eyes began to hurt so badly that he could not continue the driving; he left his car and came to St. Paul on a bus. On May 20 he consulted Dr. Lee in Minneapolis, who treated him for some time and referred him to Dr. Fink for a complete eye examination and an X-ray. Dr. Fink first saw him on June 10. Later the eye was also X-rayed by Dr. Shons at the request of Dr. Shellman. Each of these five doctors testified at the hearing.

Farley became occupationally blind in the right eye, with a loss of vision of 100 per cent. He filed his petition with the industrial commission for compensation. The answer of Nelson, Mullen & Nelson, Inc. and Zurich General Accident & Liability Insurance Company, its insurer, was filed, as was also the answer of Farrell & Clark and Royal Indemnity Company, their insurer. On October 21, 1930, the matter came on for hearing before P. C. Reynolds, referee of the commission. On November 10 the referee made his findings of fact and awarded compensation against Farrell & Clark and the Royal Indemnity Company and dismissed the matter as to Nelson, Mullen & Nelson, Inc. and its insurer. The amount of the award is not questioned. Farrell & Clark and their insurer appealed to the industrial commission, and on February 14, 1931, the commission filed its decision confirming the findings and award of the referee. A writ of certiorari was issued on March 18, 1931, on the application of Farrell & Clark and their insurer. On March 25, 1931, Farley, in order that Nelson, Mullen & Nelson, Inc. and its insurer might not be released, also applied for and received a writ of certiorari.

Various assignments of error are made which bring before us the only issue for determination in this case. That issue is whether the injury Farley sustained while in the employ of Farrell & Clark resulted in the blindness, or whether the injury sustained while in the employ of Nelson, Mullen & Nelson, Inc. resulted in that blindness. The only question is as to which employer and insurer must pay the compensation.

The contention of Farrell & Clark is "that the evidence is insufficient; * * * that upon the undisputed facts it must be said as a matter of law that Farley has wholly failed to make out a case against appellants and has wholly failed to prove any disability as a result of any injury sustained while in the employ of appellants."

There is no dispute as to the total occupational blindness in Farley's right eye or that his blindness is the result of the presence of a foreign body (disclosed by the X-rays) in the globe of the eye, plus the effects and consequences arising therefrom; that the blindness is traumatic in origin and permanent in character. The situation

resolves itself into a determination of the question as to when the foreign body causing the blindness entered the eye. Farrell & Clark insist that the injury to Farley's eye while in their employ was minor in character and had no after effect.

A simple problem is presented. On the record, was there evidence reasonably justifying the findings of the referee and the adoption and confirmation thereof by the commission? If there is such evidence, there must be an affirmance. The commission acted as a trier of fact. Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419, and cases cited; Klugman v. Central Hanover B. & T. Co. 183 Minn. 541, 237 N. W. 420. As the evidence was in dispute, the determination of the commission will not be disturbed if it has reasonable support.

The dispute as to which is liable arises largely from the conflicting evidence of the expert witnesses of the respective parties, all of whom are specialists of high standing in the profession. One expressed the opinion that the injury resulting in loss of vision came from the second occurrence and not from the first. However he frankly said, after hearing all of the testimony, that he did not know the present cause of Farley's blindness. Another expert stated that he could not tell which of the two accidents caused the blindness.

Dr. Fink, who had X-rayed the eye and treated Farley, found a scar on the cornea at about the location of the piece of steel when removed by Dr. Fulton. He gave as his opinion that the blindness did not result from the accident of May 6. In his examination of the eye he found a foreign body surrounded by scar tissue and newly formed blood vessels. He testified that this indicated to him that the "foreign body was not of recent origin"; that blood vessels of that type cannot form in less than a month or six weeks. This examination by Dr. Fink was made approximately one month after May 6. Upon that condition he predicated the opinion hereinbefore expressed. His testimony was lengthy, both on direct and cross-examination. One of the other doctors testified that he thought the blood vessels and scar tissue could be accounted for in a month's time. When asked: "It is not probable however, is it,

doctor?" He simply answered: "It is possible." There was other evidence furnishing support for the award made.

Upon this state of the record, the referee and the industrial commission were justified in reaching the conclusion that the blindness resulted from the accident of March 14. The evidence and the inferences permissible therefrom do not clearly require reasonable minds to adopt a conclusion contrary to the one arrived at. Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419. We should not disturb the conclusion reached.

Employe is allowed $75 as attorney's fee in this court.

Affirmed.